UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                                  CASE NO: 2:14-cr-66-FtM-38CM

JULIAN FUENTES-FLORES

### ORDER[1]

This matter comes before the Court on the United States of America's (Government) Motion to Revoke the Magistrate Judge's Order Releasing the Defendant Julian Funentes-Flores (Doc. #21) filed on July 10, 2014. The Defendant Funentes-Flores filed a Response in Opposition (Doc. #24) on July 24, 2014.

On July 7, 2014, a detention hearing was held before the Honorable Magistrate Judge Carol Mirando. At that detention hearing, the Government was represented by Assistant United States Attorney, Michael Bagge-Hernandez. Assistant Public Defender, Martin Der Ovanesian represented the Defendant Fuentes-Flores who was present.

### BACKGROUND

The Defendant was born in Mexico on September 8, 1981, and is a citizen of Mexico who has been living in the United States since he was sixteen (16) or seventeen (17) years old. (Doc. #25, p. 18). He is married to Debbie Duckels, a United States Citizen

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

However, he and Duckles separated two (2) years ago and were not living together on the date of his arrest. The Defendant has a two and half year old son by another woman, who is a citizen of the United States. The child's mother and the Defendant's son reside in Lehigh Acres, Florida. The Defendant's estranged wife, Duckels, resides in Alva, Florida. Both residences are located within the Middle District of Florida's Fort Myers Division.

The Defendant was initially deported from the United States to Mexico on May 15, 1999. The 1999 Deportation Order prohibited the Defendant from reentering the United States without the permission of the Attorney General for a period of ten (10) years. (Doc. #21, p. 7).

In 2005, the Defendant's first wife, Maritza Guadalupe, petitioned the United States Citizenship and Immigration Services (USCIS), on the Defendant's behalf, to allow him to lawfully immigrate to the United States. At that time, the USCIS turned down the Defendant's application. Then in 2007, the Defendant's current wife, Duckles, hired the law firm of Devore & Devore, P.A. to represent him in seeking permission to lawfully immigrate to the United States. (Doc. #25, p. 16; Doc. #21, p. 8). Devore & Devore declined to represent the Defendant. As grounds for denying representation, Devore & Devore, stated the Defendant was permanently inadmissible for permanent residence because he was deported in 1999 and he subsequently returned to the United States without inspection or permission from the Attorney General or the Director of Homeland Security. (Doc. #25, p. 16; Doc. #21, p. 8). Duckles testified at the detention hearing in this matter that there are other lawyers looking into the issue for the Defendant but did not elaborate on which firm was handling it. (Doc. #25, p. 16).

The Defendant was subsequently found in the United States without permission of the Attorney General or the Director of Homeland Security and was deported to Mexico on May 2, 2011.  On June 4, 2011, the Defendant reentered the United States at Brownsville, Texas and presented a birth registration card from Cameron County, Texas bearing the name "Luis Alberto Cano, Jr." and claimed to be Cano to the U.S. Customs and Border Protection Officer. (Doc. #21, p. 8-9).  Additionally, the Defendant presented a laser visa border crossing card in the name of "Israel David Cavazos Ramirez" and claimed to be Ramirez to the U.S. Customs and Border Protection Officers. (Doc. #21, p.8-9). The Defendant pled guilty to the illegal entry to the United States and concealment of a material fact in the United States District Court for the Southern District of Texas in Brownsville, Texas. (Doc. #21, p.8-9).  The Defendant was then deported back to Mexico. The Defendant subsequently reentered the United States and was deported on June 28, 2011 and again on July 6, 2011. (Doc. #21, p. 7).

On February 21, 2014, the Lee County Sheriff's Office, arrested the Defendant in Fort Myers, Florida, for disorderly intoxication in a public place causing a disturbance. The Defendant's finger prints were run through the FBI/NCIC fingerprint database and also through the Immigration and Customs Enforcement (ICE) computer system IDENT. The IDENT process resulted in the Defendant being identified as having been previously deported without permission to reenter the United States. (Doc. #1, p. 2-3).

On June 17, 2014, an arrest warrant was issued for the Defendant and on June 19, 2014, the Defendant was taken into federal custody. (Doc. #1, p. 2).  After that, ICE issued an immigration detainer due to the Defendant's illegal status. (Doc. #1, p. 2-3). On June 25, 2014, a Grand Jury indicted the Defendant on one count of illegal entry of a

deported alien. The Defendant appeared before United States Magistrate Judge Carol Mirando on July 7, 2014, for a detention hearing. After the Court heard argument, Judge Mirando granted the Defendant's release on $50,000.00 unsecured bond. Judge Mirando allowed a stay of the Defendant's release pending the Government's appeal of her decision. The Motion appealing the release of the Defendant is now before the Court and ripe for review.

## **DISCUSSION**

The Government argues the Magistrate Judge's Order releasing the Defendant on bond should be overturned because he is a risk of flight. Conversely, the Defendant contends that the Magistrate Judge did not err in finding that release is appropriate because the Defendant's family ties will keep him from fleeing.

When requested, the district court must promptly undertake an evaluation of the propriety of a magistrate judge's pre-trial detention order. U.S. v. Arevalo, 2013 WL 625041, *2 (M.D. Fla. February 19, 2013) (citing U.S. v. King, 849 F.2d 485 (11th Cir.1988)). A district court reviews *de novo* a magistrate judge's pre-trial release order. U.S. v. Megahed, 519 F.Supp.2d 1236, 1241 -1242 (M.D. Fla. 2007) (citing U.S. v. Hurtado, 779 F.2d 1467, 1481 (11th Cir.1985)). Review by the district court contemplates an "independent consideration of all facts properly before it," Megahed, 519 F.Supp.2d at 1241 (citing U.S. v. Gaviria, 828 F.2d 667, 670 (11th Cir.1987) (citing Hurtado, 779 F.2d at 1480-81)). If the district court concludes after a careful review the magistrate judge's findings of facts based on both the parties' papers and the evidence presented at the detention hearing, and the magistrate judge correctly applied the law, "[t]he court may then explicitly adopt the magistrate's pre-trial [release] order." U.S. v. King, 849 F.2d 485,

490 (11th Cir.1988). However, if necessary to the resolution of an essential issue of fact, the district court may marshal further evidence by convening a hearing. Megahed, 519 F.Supp.2d at 1242.

In this particular instance, the Court did not simply rely on the record before the Magistrate Judge, but instead conducted a *de novo* review of the matter by reviewing the entire docket, the papers filed by the parties, and the transcript of the hearing held before Magistrate Judge Mirando on July 7, 2014. U. S. v. Arredondo, 1996 WL 521396, at *3–4 (M.D. Fla. Sept.11, 1996) (reversing magistrate judge's conditional order of release after conducting a *de novo* review); U.S. v. Ippolito, 930 F. Supp. 581, 582 (M.D. Fla.1996) (same). The Court further acknowledges that Defendant's neighbors and friends have written letters in support of his character as a person. (Doc. #25, p. 13-14) and the Court has reviewed those documents as well.

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." U.S. v. Price, 773 F.2d 1526, 1527 (11th Cir.1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his presence at trial. U.S. v. Ramos, 2014 WL 1515264, *1 (S.D. Fla. April 7, 2014) (citing U.S. v. Medina, 775 F.2d 1398, 1402 (11th Cir.1985)). By contrast, where the Government seeks to detain a defendant based on a contention that he is a danger to the community, it must show by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. Id. In the

instant matter, the Government is not contending the Defendant poses a threat of danger, therefore, the Court need not review the evidence in that regard.

Pursuant to 18 U.S.C. § 3142(g), there are several factors the Court shall consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required. Those factors to be considered are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of *section 1591,* a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
> (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c) (1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

The Court will review the factors to determine the Defendant's risk of flight under the preponderance of the evidence standard and how they impact the Government's Motion for revocation of the Magistrate Judge's Order releasing the Defendant.

As to the nature and circumstances of the offense charged, the Defendant was indicted on June 25, 2014, on charges of illegal reentry into the United States. The offense is not a crime of violence, a violation of 21 U.S.C. § 951, a Federal crime of terrorism, nor does it involve a minor victim or a controlled substance, firearm, explosive, or destructive device.

At the detention hearing, the Defendant's estranged wife, Duckles, offered to allow the Defendant to return and live in her home.  The Defendant is currently residing with the mother of his son.  The Defendant argued that because of his close relationship with his two and a half year old son he would not flee.  The Defendant also argues that he will be employed while out on bond because he can return to his old job as a baker or work for Duckles.

The Government argues that Defendant is a risk of flight **because of** his son.  The Government argues that since the Defendant will be deported no matter the outcome of the instant case, he will flee in order to stay in the United States and be with his son.  The Government's argument is well taken.  The outcome of the instant case appears to be irrelevant to the matter of the Defendant's deportation.  In fact, the Defendant has shown previously that he has the means to leave the area, use improper identification, and travel from country to country with illegal documents using assumed names.

The Defendant does not own a home or have any property in the relevant community.  The Defendant argues he can return to his past employment as a baker or

take a job with Duckels; however, he is not employable based upon his illegal immigration status and any suggestions that he can work if released is not legally possible. As such, the Defendant has failed to establish that he has financial ties to the community that would keep him from fleeing.

Additionally, the Defendant has reentered the United States after being deported on at least four (4) occasions. In 2011, the Defendant produced false papers asserting himself to be a citizen of the United States or that he had legal status to be in the country. (Doc. #21, p.8) These acts demonstrate to the Court that the Defendant has access to false papers and has shown a willingness to use same to deceive immigration officials. The Defendant's willingness to deceive immigration and border security officials with false papers and his continued illegal reentry into the United States constitute a serious violation of the immigration laws of the United States and shows a disregard for the laws of the United States. His continued illegal reentry and the attempts to falsify his identity demonstrate to the Court that the Defendant has little regard for immigration procedures and laws of the United States. His actions are a strong indication that he would not give any more consideration to this Court's orders to appear at proceedings in this case than he does to the laws he has clearly violated.

The Government further argues, the Defendant is prohibited by law from obtaining permanent residence status in the United States. Pursuant to 8 U.S.C. § 1182(a)(9)(A)(i) the Immigration and Nationality Act (INA) an individual that was deported and returned to the United States without the permission of the Attorney General or Secretary of Homeland Security cannot seek permanent residence status. The INA further prohibits an individual who falsely claims U. S. Citizenship but does not have it from seeking

permanent residence status. The Defendant has committed both offenses pleading guilty to using false documents claiming to be a U.S. Citizen and illegally reentering the United States without permission. (Doc. #21, p. 8). Thus, the Defendant has little to gain by staying for this Court's proceedings and great incentive to flee knowing that there is a strong likelihood that he will be deported no matter the outcome of the instant action.

Finally, the Defendant has an ICE detainer against him. While an ICE detainer cannot be the sole reason for detaining an individual in custody, it can be used as a consideration for detention. U.S. v. Al'Saqqa, 2014 WL 252035, *3 (S.D. Fla. January 7, 2014) (finding "although not presumptively determinative, the fact that a defendant has an ICE detainer is also a factor to consider when evaluating the appropriateness of the pretrial detention.").

After considering the investigation of the Defendant's status in this Country, his lack of financial ties to the community, his history of continued illegal reentry without permission, production of false U.S. Citizenship papers to immigration officials, his inability to obtain permanent residence in the United States, coupled with the ICE detainer; the Court finds the Government established by the preponderance of the evidence that no condition or set of conditions will reasonably assure the Defendant's presence at trial. Thus, the Court finds that the Defendant is a risk of flight. As such, the Government's Motion is due to be granted and the Magistrate Judge's Order releasing the Defendant on $50,000.00 unsecured bond is due to be revoked.

Accordingly, it is now

**ORDERED:**

(1) The United States of America's Motion to Revoke the Magistrate Judge's Order Releasing the Defendant Julian Funentes-Flores ([Doc. #21](Doc. #21)) is **GRANTED**.

(2) Magistrate Judge Mirando's Order releasing the Defendant, Julian Funentes-Flores is **REVOKED**.

(3) The Defendant Julian Funentes-Flores is remanded to the custody of the U.S. Marshals Service and ordered detained pending further proceedings.

**DONE AND ORDERED** at Fort Myers, Florida, this 11th day of August, 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record