UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                    CASE NO: 2:14-cr-66-FtM-38CM

JULIAN FUENTES-FLORES
_____

### ORDER[1]

This matter comes before the Court on the Defendant, Julian Fuentes-Flores' Motion to Dismiss (Doc. #38) filed on November 24, 2014. The United States of America (Government) filed its Response in Opposition on December 5, 2014, (Doc. # 48). The Motion is now fully briefed and ripe for the Court's review.

### BACKGROUND FACTS

The Defendant, Julian Fuentes-Flores was ordered deported by an immigration judge on May 13, 1999. He was again found in the United States without the permission of the Attorney General of the United States or his successor, the Secretary of Homeland Security in violation of 6 U.S.C. § 202(3)(4) and (557) on July 6, 2011. On June 25, 2014, a Grand Jury found probable cause to indict the Defendant with one count of illegal reentry of a deported alien (Doc. #12).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

This Court issued a Scheduling Order (Doc. #20) on July 8, 2014. Under the terms of the Court's Scheduling Order, the Defendant had fourteen (14) days in which to file his Motion to Dismiss. However, the Defendant waited almost four (4) months until November 24, 2014, to file his Motion. The Court denied the Motion to Dismiss as untimely. The Defendant subsequently filed a Motion for Reconsideration (Doc. #41) which was granted by the Court on December 3, 2014.

In his Motion for Reconsideration, the Defendant argued that he did not obtain the information vital to his Motion to Dismiss until November 17, 2014. Specifically, the Defendant's Counsel states that he did not know that the initial deportation order from May of 1999 was issued to the Defendant when he was a minor. The Defendant filed his Motion to Dismiss on November 24, 2014, only eight days after discovering the new information. Based upon the Defendant's argument in his brief, the Court granted the reconsideration and directed the Government to respond. The Government has now responded to the Motion for Reconsideration and the Motion to Dismiss.

## DISCUSSION

The Defendant argues the Motion to Dismiss was timely filed because the Government did not provide him with documentation required to file his Motion. In his Motion to Dismiss, the Defendant argues that the 1999 deportation was illegal because he was an unrepresented minor and therefore, he could not voluntarily, knowingly, and intelligently waive his right to appeal the Immigration Judge's removal order.

*(1) Whether the Motion to Dismiss was Timely Filed*

The Defendant argues the Motion to Dismiss was timely filed because the Government did not provide him with pertinent information related to his 1999 deportation.

Specifically, the Defendant argues the Government failed to provide him with the records of his 1999 deportation which showed he was an unrepresented minor at the time of his deportation hearing. The Defendant states that he found out about the age of the Defendant at his initial 1999 deportation hearing via private investigations in November of 2014.

The Government responds that all of the information in the Defendant's Alien File (A-file) was provided to the Defendant. According to the Government, the Order from the Immigration Judge, the Defendant's Notice to Appear (I-862), and the Notice to the Respondent among other documents from the Defendant's 1999 removal hearing were produced during discovery on July 23, 2014. These are the pertinent documents the Defendant says he did not have in his possession until November 2014.

The Government further represents that Defense Counsel acknowledged that he did indeed have the documents in his possession on July 23, 2014, and would correct his previous assertion with the Court.[2] Thus, based upon the Government's response, it appears the Defendant was in possession of the relevant information from July 23, 2014, going forward. As such, the Court finds that its initial Order denying the Motion as untimely was correct. Nevertheless the Court will consider the Motion to Dismiss on the merits.

### (2) *Whether the 1999 Deportation Hearing was Illegal*

The Defendant argues the case should be dismissed because the original deportation order from 1999 was illegal. A defendant charged in a criminal proceeding

---

[2] To date, Defense Counsel has failed to file any documentation advising the Court that he in fact had the materials by on or about July 23, 2014.

under 8 U.S.C. § 1326 may collaterally attack the validity of a prior deportation order. Eight U.S.C. § 1326(d) states in pertinent part:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;
> > (3) and the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Section 1326(d) was "intended to insure that minimum due process was followed in the original deportation proceeding while preventing wholesale, time consuming attacks on underlying deportation orders." 140 Cong. Rec. S5558-01, S5571 (daily ed. May 11, 1994); *see also* U.S. v. Sanchez-Peralta, 1998 WL 63405, at *2 (S.D.N.Y. Feb. 13, 1998) (analyzing 1996 amendments to § 1326) (unpublished). All three requirements of § 1326(d) must be met in order to prevail in a collateral attack.

### *(a) Whether the Defendant Exhausted His Administrative Remedies*

The Government argues that the Defendant did not exhaust his administrative remedies prior to bringing the instant collateral attack of his 1999 deportation. The Defendant argues he does not have to meet the administrative exhaustion requirement because the waiver of his right to administrative appeal of his 1999 deportation was illegal since he was an unrepresented minor.

The Defendant states his initial 1999 deportation violated his right to due process because no adults were notified of his deportation hearing and as a juvenile he did not have an adult present with him at the hearing. The Defendant's argument that the 1999

deportation hearing deprived him of due process because his parents or other adult were not notified regarding the hearing is not well taken.

The Defendant argues that the July 6, 2011 deportation was a reinstatement of the 1999 deportation order which he claims was illegal. Defendant states the 1999 deportation was illegal because he was a minor—seventeen years old—at the time and none of the special rules and procedures that apply to minors were followed by the Immigration Judge at his removal hearing.

Supporting his proposition the Defendant cites to 8 C.F.R. § 242.24, the INS Juvenile Detention and Release Regulation, which provides that a responsible adult assumes both custody and responsibility for a juvenile released into that adult's care. The Defendant argues that the purpose of the Regulation in requiring the notification of a parent, attorney, or responsible adult is to protect the welfare of the juvenile. The Defendant also cites to Ninth Circuit case law holding that juveniles are presumed to be unable to appear at immigration proceedings without an adult present.[3] Flores-Chavez v. Ashcroft, 362 F. 3d 1150 (9th Cir. 1993). Since the Defendant had to appear before the Immigration Judge in 1999 without an adult present, the Defendant asserts the 1999 deportation was illegal. As a consequence of the 1999 deportation being illegal, the Defendant argues the 2011 deportation—the subject of the instant action—was also illegal since the 2011 deportation is merely the reinstatement of the 1999 deportation.

The Government further states the Defendant's argument asserting that either his parents or other adult were supposed to receive notice of his 1999 immigration hearing is meritless. The Government contends the case relied on by the Defendant, Flores-

---

[3] All Parties are in agreement that the Eleventh Circuit has not ruled on the matter at issue in this case.

Chavez v. Ashcroft, does not stand for the proposition that an adult must be present at a minor's immigration hearing.  Instead, the Government argues that Flores-Chavez stands for the proposition that after a minor is released from INS custody an adult should be notified in order to ensure the minor's attendance at the immigration hearing.

In Flores-Chavez, the immigration court granted bail to a minor prior to his immigration hearing but failed to provide notice to his parents or guardian of the impending immigration hearing. Id. at 1154 The Ninth Circuit found that "the regulation governing release to non-related adults . . . makes explicit what the responsible adult release requirement implicitly recognizes: juveniles are presumed unable to appear at immigration proceedings without the assistance of an adult." Id. at 1157.  The Flores-Chavez Court pointed out that juveniles were not responsible enough to return for their immigration hearing after being released on bail without an adult. Id.

Thus, contrary to the Defendant's position, the Ninth Circuit did not hold that a minor must be accompanied by an adult at their immigration hearing, but that a responsible adult should be notified about the hearing after the minor was released on bail to ensure that the minor actually appeared for the hearing. Id.  In fact, the only notice requirement in the Regulations occurs when a defendant seeks relief for detention, voluntary departure, parole, or any form of relief from removal, where it appears that the grant of such relief may effectively terminate some interest inherent in the parent-child relationship and/or the juvenile's rights and interests are adverse with those of the parent, and the parent is presently residing in the United States, the parent shall be given notice of the juveniles application for relief, and shall be afforded an opportunity to present his or her views and assert his or her interest. 8 C.F.R. §242.24(f).

The Defendant's due process rights were not violated by there being no notice sent to his parents or any other responsible adult regarding his immigration hearing. No such notice was required. As such, the 1999 deportation did not violate the Defendant's Constitutional right to due process. Having found that the 1999 deportation hearing was in fact constitutional, the Court can now review the Defendant's collateral attack on administrative exhaustion.

The Defendant does not deny that he waived his right to administrative appeal during the 1999 deportation hearing. Instead, he claims his waiver was involuntary because he was not accompanied by an adult and therefore, his wavier could not have been knowingly and intelligently made. While the Defendant argues that the Defendant's waiver was unconstitutional because he was an unaccompanied minor, the Supreme Court has held that juveniles are capable of voluntarily waiving their right to an appeal. [Reno v. Flores, 507 U.S. 292, 309, 113 S. Ct. 1439, 123 L. Ed. 2d 1, (1993)](#) (noting that "[w]e have held that juveniles are capable of 'knowingly and intelligently' waiving their right against self-incrimination in criminal cases . . . The alleged right to redetermination or prehearing custody status in deportation cases is surely no more significant."). The Court finds that the Defendant's wavier at the 1999 deportation hearing was knowingly and intelligently made. Consequently, the Defendant has failed to establish that he administratively exhausted the appeals process for his 1999 deportation.

*(b) <u>Whether the 1999 Deportation Deprived the Defendant of Judicial Review</u>*

The Defendant argues that he was deprived of the opportunity for judicial review because the Immigration Judge accepted an involuntary, unintelligent, and unconsidered waiver of Defendant's appellate rights. The Federal Regulations and current case law

7

allow a minor to be detained and deported without representation. As noted above, the Supreme Court found that juveniles are capable of voluntarily waiving their right to an appeal. Id. The Defendant has not shown that he was deprived of his appellate right to judicial review of his deportation determination made in 1999. The Defendant clearly waived his right to appeal.

(c) *Whether the 1999 Deportation Order was Fundamentally Unfair*

The Defendant argues that the 1999 deportation decision was unfair because the Government deprived him of the opportunity to explore meaningful options available under the Act such as asylum, an application for withholding of removal, or voluntary departure. The Defendant's argument lacks merit.

Initially, the Court notes that immigration officials do not have an affirmative obligation to advise aliens of the entire appeal process. U.S. v. Solis, 2012 WL 1574647, * 4 (S.D. Fla. April 30, 2012). Secondly, the Defendant appeared before an Immigration Judge in 1999 and waived his rights to appeal. As noted above, the Supreme Court has upheld a juvenile's ability to voluntarily, intelligently and knowingly waive his rights. Reno v. Flores, 507 U.S. 292, 309. In view of the Defendant's waiver, the 1999 Deportation Order was not fundamentally unfair.

## **CONCLUSION**

The 1999 deportation did not deprive the Defendant of constitutional due process. Furthermore, the Defendant has not established any of the § 1326(d) requirements. Defendant did not exhaust his administrative remedies; the deportation hearing did not improperly deprive the Defendant of the opportunity for judicial review; and the entry of

the order was not fundamentally unfair.  Therefore, the Motion to Dismiss is due to be denied.

Accordingly, it is now

**ORDERED:**

The Defendant, Julian Fuentes-Flores' Motion to Dismiss ([Doc. #38](Doc. #38)) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this December 17, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record